LOWELL CO-OPERATIVE BANK *vs.* THOMAS F. SHERIDAN.

Middlesex.    March 8, 1933. — December 28, 1933.

Present: RUGG, C.J., WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Bills and Notes,* Presentment. *Equity Pleading and Practice,* Agreed statement as to evidence. *Bank and Banking. Words.* "Reasonable time."

At the hearing of a suit in equity brought by a corporation, the parties stipulated that the treasurer of the plaintiff if present would testify to all the facts alleged in the bill not admitted in the answer. A decree was entered for the plaintiff and the defendant appealed. *Held,* that

(1) The stipulation was in substance an agreement as to the evidence to be considered by the court;

(2) In the circumstances and on such a record it might be assumed that the trial judge accepted as true all allegations of the bill so far as they tended to support his conclusions.

In deciding whether a check was presented "within a reasonable time after its issue" under the provisions of G. L. (Ter. Ed.) c. 107, §§ 209, 20, resort must be had to the rules established by this court in similar cases, one of which is that, where the drawer and drawee and the payee are all in the same city or town, a check, to be presented within a reasonable time, should be presented at some time before the close of banking hours on the day after it is issued, and that its circulation from hand to hand will not extend the time of presentment to the detriment of the drawer.

A shareholder in a coöperative bank, to pay a share loan, on a Friday gave the bank his check on his account in a commercial bank in the same city which was not a member of the clearing house of that city. The coöperative bank, in accordance with its custom, adopted by reason of the size of its clerical force, on Saturday listed all checks it received on the Friday, including the shareholder's, and deposited them in a third bank in the city on Saturday evening. The third bank, in accordance with its custom to list on Monday checks which it received on the second bank on Saturday evening and to present them to that bank on Tuesday, presented the shareholder's check on Tuesday. These customs of the banks were not known to the share-

holder.  If the check had been presented on Monday, it would have been paid.  At the close of business on Monday the second bank suspended operations.  The coöperative bank, which had marked the shareholder's note as paid, brought against him a suit in equity to require payment of the note.  A judge found that the check had been accepted by the plaintiff as payment and that there had been no failure by the plaintiff to present it to the second bank for payment within a reasonable time; and a decree for the plaintiff was entered.  The defendant appealed.  *Held*, that

(1) The mere fact that the defendant chose to keep his checking account in a bank which was not a member of the local clearing house, thus making collection of his checks additionally difficult for the plaintiff, did not change general rules of law as to the presentment of checks drawn on such a bank;

(2) The general rule applied, and it followed that there was failure by the plaintiff to present the check for payment within a reasonable time after its issue and that, if it had been so presented, it would have been paid;

(3) The plaintiff had made the check its own, not having presented it for payment within the time permitted by law;

(4) The decree was reversed and the bill was ordered dismissed.

BILL IN EQUITY, filed in the Superior Court on November 17, 1932, and afterwards amended.

The suit was heard by *Gray*, J.  Admitted facts and material findings and rulings by the judge are stated in the opinion.  By order of the judge, a final decree was entered adjudging that the defendant owed the plaintiff $245.33.  The defendant appealed.

*F. S. Harvey*, for the defendant.

*F. M. Qua*, for the plaintiff.

RUGG, C.J.  Allegations of the bill admitted by the answer are these:  The plaintiff is a duly organized coöperative bank with its place of business in Lowell.  Since November, 1927, the defendant has been the owner of unmatured shares of capital stock of the plaintiff, and has been obligated to pay to it stated dues on such shares on or before the regular monthly meetings of the plaintiff.  Those meetings were held on a specified Friday of each month.  In May, 1930, the defendant borrowed from the plaintiff $500, executed an agreement termed a share loan note for that amount and, as collateral security, pledged his unmatured shares of stock with stipulations as to interest and repayment.  The defendant had repaid $300 on this note prior

to the transaction here in question. A regular meeting· of the plaintiff was held on the evening of Friday, December 11, 1931, for the receipt of moneys due that month. Late in the afternoon of that day the defendant tendered to the plaintiff in payment of his obligations his check for an amount equal to the balance of his note plus the monthly dues on his unmatured shares. The clerk of the plaintiff to whom this tender was made received the check, caused the note to be perforated with the legend "Paid 12-11-31" and handed it to the defendant, who retains and refuses to return it to the plaintiff, made the entry in the pass book evidencing the pledged shares "Paid on loan, $200.00" and made appropriate entries in pass books of payment of dues on the shares of the defendant.

Allegations of the bill as to which the defendant pleaded ignorance are these: The plaintiff is a comparatively large coöperative bank. In December, 1931, and for some time prior, payments to it of dues, interest and fines amounted to approximately $75,000 monthly divided into about four thousand small payments substantially all made during the week of the monthly meeting and by far the greater portion on the day of the meeting and the Saturday following. More than one third of these payments were made by check. It was a practical impossibility for the clerical force of the bank to list and deposit each of these ·checks as received, and for a long time it had been the custom of the plaintiff in the regular course of its business to list on the day following its meeting day all checks received on that and the preceding day and deposit them in one of its local banks of deposit on the evening of that Saturday at or near the close of business that evening. That regular course of business had been followed for years with respect to the monthly checks given by the defendant to the plaintiff. Pursuant to that custom the plaintiff deposited on the evening of Saturday, December 12, in the Union Old Lowell National Bank in Lowell checks to the number of five hundred fifty-five including the check received from the defendant on December 11. The Middlesex National Bank, on which the check of the defendant was drawn, was a

national banking association then doing business in Lowell, but it did not belong to the local clearing house. For some time before December, 1931, it had been the habit of the Union Old Lowell National Bank to list after the close of business on each day all checks drawn on the Middlesex National Bank and to present them on the next morning, except that checks received on Saturday evening were listed on Monday and presented on Tuesday morning. Following this custom the check of the defendant here in question was listed on Monday, December 14, 1931, for presentment on Tuesday morning, but at the close of business on the afternoon of that Monday the Middlesex National Bank suspended operations and has not been reopened.

The prayers of the bill are that decree be entered in favor of the plaintiff for payment of the note and interest and for other relief.

The defendant, as above recited, having admitted some allegations of the bill and pleaded want of knowledge as to others, further answered that the plaintiff received his check in payment of his debts and did not present it within a reasonable time.

The parties filed a stipulation agreeing in addition to the facts admitted in the defendant's answer that if the treasurer of the plaintiff were present he would testify to all the other facts alleged in the bill, that the defendant had on deposit in the Middlesex National Bank sufficient funds to meet his check and that his check would have been paid if it had been presented before the closing of that bank at the close of business on Monday, December 14, 1931.

The trial judge found that the defendant's check was accepted as payment, and that, giving due weight to the usage of the business and the facts of this particular case, there was no failure to present the check for payment within a reasonable time after its issue up to the time the bank on which it was drawn was closed. He found and ruled that thereafter presentment for payment and notice of dishonor were not required. Decree was entered in favor of the plaintiff. The appeal of the defendant brings the case here.

The stipulation of the parties that the treasurer of the plaintiff if present would testify to all facts alleged in the bill not admitted in the answer is in substance an agreement as to the evidence to be considered by the court. *Frati* v. *Jannini*, 226 Mass. 430, 431. Under this stipulation, it may be assumed that the trial judge accepted as true all allegations of the bill so far as they tend to support his conclusions.

The relevant statutory provisions are G. L. (Ter. Ed.) c. 107, § 209, that "A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay," and § 20, that "In determining what is a 'reasonable time' or an 'unreasonable time' regard is to be had to the nature of the instrument, the usage of trade or business, if any, with respect to such instruments, and the facts of the particular case." It was said in *Gordon* v. *Levine*, 194 Mass. 418, 421, referring to the provision now in § 20 that it laid down no new rule because the factors there enumerated had always been considered, and that therefore in deciding whether a check was presented within a reasonable time "resort must be had to the rules which have been hitherto established in similar cases. And one of the rules which has been established is, that where the drawer and drawee and the payee are all in the same city or town, a check, to be presented within a reasonable time, should be presented at some time before the close of banking hours on the day after it is issued, and that its circulation from hand to hand will not extend the time of presentment to the detriment of the drawer. If it is presented and paid afterwards the drawer suffers no harm. But if not presented within the time thus fixed, and there is a loss it falls not on him but on the holder." Cases from many jurisdictions as well as leading text books are there cited in support of that proposition. It was the implication of our own earlier decisions. *Taylor* v. *Wilson*, 11 Met. 44, 52. *Small* v. *Franklin Mining Co.* 99 Mass. 277, 280. *Whitney* v. *Esson*, 99 Mass. 308. *Weddigen* v. *Boston Elastic Fabric Co.* 100 Mass. 422, 424. *Fernald* v.

*Bush,* 131 Mass. 591, 594. It was said in *Furber* v. *Dane,* 203 Mass. 108, 112, 113, by Sheldon, J., speaking for the court: "The check . . . received . . . on January 13 was not presented . . . for payment until January 15. It would have been paid if it had been presented during banking hours on January 14. By this delay he made the check his own." Thus *Gordon* v. *Levine,* 194 Mass. 418, 421, was reaffirmed. See also *Gordon* v. *Levine,* 197 Mass. 263, 266. Plainly this is the general rule. See cases collected in 8 C. J. pages 540, 541; 5 R. C. L. page 509; 10 Ann. Cas. pages 1121, 1122. There was failure on the part of the plaintiff to comply with this general rule. The check was delivered by the defendant as drawer to the plaintiff at its place of business in Lowell late on the afternoon of Friday, December 11. Whether it was thus delivered after the close of the business hours of commercial banks does not appear, but the plaintiff was open for business. It was issued by the defendant to the plaintiff in Lowell and was drawn on a commercial bank in Lowell. The general rule above stated, therefore, was precisely applicable to the facts here disclosed. It required that the check "be presented at some time before the close of banking hours on the day after" its issue, that is to say, on Saturday, December 12. If it be assumed that weight may be attributed to the deposit of the check in a local bank of deposit for collection, that would not extend the time beyond Monday, December 14. The check was not presented on that day. If it had been so presented during banking hours, it would have been paid.

The express provision of § 20 requires the court in determining what is a reasonable time for presentment of a check to take into consideration "the facts of the particular case." The facts in the case at bar are that the plaintiff is a co-operative bank. The purpose of such a bank is to accumulate the savings of its members in fixed periodical instalments payable at a specified time in each month and loan such accumulations to its members, with the right to invest funds not so needed in certain other securities. G. L. (Ter. Ed.) c. 170, §§ 2, 13, 21, 22, 23, 26, 27, 32. *Lowell Co-op-*

*erative Bank* v. *Dafis,* 276 Mass. 3. Every shareholder and borrower is bound to make comparatively small monthly payments to the bank. This is the only form of bank bound to make from its shareholders collections due on a specified day in each month. Its design is to invite a large number of persons to become shareholders and to make these small payments each month. It is of importance that the expenses of such an institution be reduced to the lowest amount consistent with efficiency and safety. It was agreed that the treasurer of the plaintiff would testify that it was "a practical impossibility" for the plaintiff with its clerical force to list and deposit all the checks of its shareholders as they came in at the monthly due date. Its practice with respect to such checks has been narrated. This usage between the plaintiff and its shareholders paying dues by check is not shown to have been a general custom with all such banks. *Dickinson* v. *Gay,* 7 Allen, 29. *Conahan* v. *Fisher,* 233 Mass. 234. Although this regular course of business had been followed by the plaintiff "for years with respect to the monthly checks previously given by" the defendant to the plaintiff, it is not shown that this course of business was known to the defendant. Commonly, one who deals extensively in the receipt of checks for collection in its ordinary business must conform to the general rules of law as to their presentment and collection. The defendant chose to keep his checking account in a bank which was not a member of the local clearing house. Collection of his checks may have raised an additional difficulty for the plaintiff. But it does not change general rules of law as to the presentment of checks drawn on such a bank. A clearing house is established for convenience of the banks, and their customers are not parties to the regulations established for its operation. The practices of banks belonging to the clearing house with respect to nonmembers do not affect the rights of depositors in the latter in the absence of knowledge. *Merchants' National Bank* v. *National Bank of the Commonwealth,* 139 Mass. 513, 518. "Reasonable time," as those words are used in G. L. (Ter. Ed.) c. 107, §§ 20, 209, has a well defined and almost uni-

versal meaning. There are obvious advantages in uniformity and stability in the interpretation of statutes relating to negotiable paper. *Union Trust Co.* v. *McGinty,* 212 Mass. 205, 208.

We are of opinion that the facts of the case at bar do not take it out of the operation of the general rule. It follows that there was failure to present the check for payment within a reasonable time after its issue and that, if it had been so presented, it would have been paid. The general rule laid down in *Gordon* v. *Levine,* 194 Mass. 418, and *Furber* v. *Dane,* 203 Mass. 108, governs the facts here disclosed.

The trial judge also found that "the defendant's check was accepted by the plaintiff as payment." Whether that finding would stand if the check had been presented within a reasonable time, had not been paid and seasonable notice of nonpayment had been given, need not be considered. *Weddigen* v. *Boston Elastic Fabric Co.* 100 Mass. 422. *Dutton* v. *Bennett,* 262 Mass. 39. If a party receiving a check "is guilty of laches in presenting it, or in giving notice of non-payment, after presentment, and the bank in the mean time suspends payment, he thereby makes it his own, and it shall operate as payment of his debt; the drawer having funds in the bank at the time of drawing the check, and not having withdrawn them." *Taylor* v. *Wilson,* 11 Met. 44, 51. The plaintiff made the check its own, not having presented it for payment within the time permitted by law. *Furber* v. *Dane,* 203 Mass. 108, 112. *Lowenstein & Bros.* v. *Bresler,* 109 Ala. 326. *Sharp* v. *Fleming,* 75 Ark. 556. *Brown* v. *Schintz,* 202 Ill. 509. *Anderson* v. *Gill,* 79 Md. 312. *McFadden* v. *Follrath,* 114 Minn. 85. *Kilpatrick* v. *Home Building & Loan Association,* 119 Penn. St. 30. *Manitoba Mortgage & Investment Co. Ltd.* v. *Weiss,* 18 So. Dak. 459.

> *Decree reversed.*
> *Decree to be entered dismissing bill.*